Secretary, U.S. Department of the Army, Mr. Mannion, to the appellant, Mr. Hawks, to the appellant, Mr. LaMond, to the appellant, Mr. LaMond, to the appellant, Mr. LaMond, to the appellant, Mr. LaMond, to the appellant, Mr. LaMond, from a criminal investigation division, concluding he made a knowingly false statement on the school enrollment form and entitled him, with the crimes of making a false statement, in larceny. Lieutenant Code has tried for years to have his records corrected by the Army Corrections board by removing the finding a probable cause that he made a knowingly false statement and removing him from the being entitled for the offense of larceny and making a false official statement. The board changed the titling decision to say well it was actually obtaining service under false pretenses but still based on the underlying and mistaken factual basis that they concluded he made a knowingly false statement. The board's failure to correct that error here is an arbitrary and capricious error. The government's arguments for appalling the board's decision ignore the actual facts. Let me just try to cut through to the chase here a little bit. The board relied on a statement in the criminal investigation, the CID report, that I think it was a sergeant said that Mr. Code's orders only extended through 2007, that basically he had like a two year duty assignment instead of three years. That statement was incorrect but that was a statement that was made. So I guess what I'm trying to understand is if the test is whether there was credible evidence or credible information, is the statement by that sergeant credible evidence or not? Judge Wilkins, whether it would be credible enough as of January 25th I believe it was, the day after the investigation began when the first sergeant made that erroneous statement, it was enough that the CID could have perhaps began the investigation but once they actually had the orders and knew that the orders actually were different, it was not enough and it certainly was not enough in January of 2011, three years later, when they actually issued this final report that included the titling of him with those offenses. And certainly there was not sufficient evidence to be probable cause, which was a separate finding that the report made that it was a knownly false statement. But suppose you're right about the probable cause issue here because the board never responded to your argument about that. Why do we need to go beyond that? Why do we need to even focus on the titling decision? In other words, if we find that it was arbitrary and capricious for the board not to consider your arguments for a probable cause, why do we need to go beyond that? The titling decision, I don't know, Attorney General, that the titling decision, I can't say it wouldn't have an impact because the titling... Under the regulations it can't, correct? Not necessarily because, let me answer it this way, the titling decision puts him into the military database as being associated for someone who was investigated for committing a crime. And how that affects him... Is there anything in the record about that, about what impact that has on service members? I don't know. I can't point you to statements in the record. I'll look for it, Your Honor, and see if I can identify that. I know, for instance, he has a security clearance that is in the process of being renewed. Part of what is looked at in security clearances are your character, your fitness and things. If a search is run on his name and criminal database, this will identify. Maybe you did, I just don't recall. Did you make these arguments before the board? The... About the consequences of the titling decision? I don't have the pinpoint site for you, Your Honor, but I do believe he pointed to the fact of the security clearance in papers before the board. I'll try to find those for you. I thought that it's not the titling that was the source of the concerns that prevented his promotions once he was in Kingsville? Yes, Judge Fuller. Certainly what the Navy Promotions Board identified, and that's in Appendix 478, was they referred to the report of investigation, which is what they looked at, but they specifically identified the probable cause findings in that report on investigation as the reasons for why we have to withhold or hold up your promotion. I don't want to disagree, Judge Tatum, on that. We certainly think the probable cause finding is clearly wrong and has to be fixed, but we also think the titling decision also has implications, and given what we know now, what the facts turned out to be, there's no credible evidence to support that he made certainly a false statement. One of the offenses that he was titled with was that he made a knowingly false statement, and that's just simply not the truth. But part of the board's finding is based on the fact that there was an intent to defraud as evidenced by the fact that he never updated that form and never submitted anything in order to be enrolled for the 07-08 school year. Well, Judge Wilkins, I don't think the board, or there's any findings that the notification had to be unright, and they did refer to saying that, well, he should have updated the school that he had moved. I mean, the form says you're supposed to update us if your circumstances change, right? The form does say that, and sworn statements from Lieutenant Code were that he did tell the registrar. There was nothing, they never got a statement, or the registrar never made a statement to disagree that Lieutenant Code actually had told him. But the registrar made a statement that disagreed with your interpretation of the regulation. The registrar, I think that... You say that we can read the regulation, and it says that he actually really was entitled to keep his kids in the school, and I don't see how the regulation can be reasonably read to say that, and the Army has found the opposite. But what I would like to point out, Judge Wilkins, on the registrar statement, that's at appendix 441. The registrar was asked at the same time that your Honor had asked earlier about the misstatement made by the person in Lieutenant Code's command about when his orders expired. I think it was right before that was when the registrar was interviewed by CID. And if you actually look at that interview statement, the CID interview never actually was specific that they asked her about Lieutenant Code. They, quote, presented, and this is quotes, presented the scenario of Lieutenant Code. So it's not clear that they actually explained the facts, that he had orders at the time when he re-enrolled his children, and after he had re-enrolled his children, he moved, and whether she had told him that under those circumstances he could stay. At the time that they asked the registrar those questions, CID was still operating under the belief that he only had two years orders, which clearly under the regulation he couldn't have continued to keep his students in the base school. I see that I'm in my rebuttal time. I'm happy to reserve that. Well, what about the whole issue of, I guess, titling and fine probable cause for intent to defraud? Are you referring to the fact that the board went back and re-enrolled? We don't think that that is the, the board's purpose is not to go back and correct or amend and change what the criminal investigation that occurred several years earlier. The board's statutory mandate from Congress is to fix errors or correct injustices, and what they did was go back and basically rewrite a criminal investigation that had never been done. Well, the error, in their view, the error is that he was charged with larceny, but that's the wrong charge, so we're going to correct that error. Why isn't that within the statutory mandate? Because the mandate of them is to correct the errors, and the correction is to remove it from the titling block. They didn't investigate him for false officials, false prejudice. I didn't read your brief as challenging that. That's not the focus of our brief. It was not challenged at all. The amicus brief. Yeah, the amicus, but you didn't, right? I'm sorry? You didn't. We're not challenging the ability to go back and amend the titling in that way. All right. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Jeremy Hawke. I'm a special assistant United States attorney and a major in the U.S. Army Judge Advocate General's Court. In this case, there's two issues. One is whether the Board's decision to uphold the CID's titling of lieutenant code was arbitrary or capricious. And the second is whether the Board found sufficient evidence for a probable cause finding on the offenses of false official statement. Can we just start with that latter one? Yes, Your Honor. Maybe we can just clear this away. So he challenged that before the Board, and the Board didn't say anything about it. He challenged it in the district court, and the district court didn't respond. And he challenges it here, and in your brief, you didn't respond. Is that all accurate? Partly accurate, Your Honor. Which part's not accurate? Well, he did bring it up in his original application to the Board. It was, I'd say, a passing reference to that issue. Well, you just told us that this is an issue before us. So you must concede that he's properly raised it. He's properly raised it in reconsideration in the district court. No, here. Here. You just told us that this is one of the two issues before us. It is, Your Honor. So you're not arguing in its way, but you didn't, the district court didn't consider it, and you didn't respond in your brief to his renewal of the argument here. Correct, Your Honor. Don't we just, doesn't this have to go back? No, Your Honor. No? It's properly before the court on the district court's denial of reconsideration. Mr. Koh did not raise this in the summary judgment briefing, as the district court's opinion states. The only time he raised it was on reconsideration, and the district court denied the reconsideration. So the only, what's before the court today is whether the district court's denial of reconsideration on that issue was an abuse of discretion. So it is properly before the court, but only for that matter. He's only raised it in the... Well, wasn't it an abuse of discretion? It was not, Your Honor. Then why? Because it wasn't raised prior to, under Rule 59, the only time, the only reason that they would reconsider it is if there's no information or to correct an error or injustice. And they didn't raise it on summary judgment, so there was no, there was nothing for the court to, the district court to consider. And can you walk us through the difference between the credible evidence standard and a probable cause standard? Yes, Your Honor. Under the CID regulation, a credible evidence standard is what a reasonable agent might find as evidence to believe that the individual may have committed an offense. What that means is then they can title that individual. Their name is placed on the titling block of a CID report of investigation. The probable cause standard requires a judge advocate to review it and to determine if probable cause is present. So that would be the same standard that you have in any other court with a reasonable suspicion. And so if, this is following up on Judge Wilkins' earlier question, if the, was it the sergeant who originally believed that Lieutenant Code's assignment was from 2005 to 2007, and if attention, if information comes to his attention that that was an error, presumably his belief that the orders terminated in 2007 would no longer be information that a reasonable agent would rely on in thinking that a person may have committed an offense. Well, Your Honor, there's evidence to support the first sergeant's statement that he had a 24-month tour in PCF, and then his change of station was to occur in August of 2007. And that is that the assignments officer told him that he was going to move in the summer of 2007. That's obviously a more factually nuanced point. But if, putting aside the application for extension, its denial, and the new change of station order that came down in late May of 2007, at the time that Lieutenant Code put in his application, his then current order, I believe the sergeant thought his then current order expired in July of 2007. And only did he later learn that it expired on its face by its terms, was set to expire in 2008. Is that right? That's correct, Your Honor, but the first sergeant had no involvement in the school enrollment. His only statement was to the Criminal Investigation Command when they asked him about Lieutenant Code. He was the first sergeant for the Military Entrance Processing Station where Lieutenant Code was assigned. So he had nothing to do with the rest of the investigation or anything to do with the enrollment form. So he makes a statement, but then whoever else is in charge of the investigation and doing the report would also have the underlying initial station assignment. Yes, Your Honor, that's correct. And so that person would then have to appropriately discount what he had learned from the sergeant in light of the document. Nobody contests that, in fact, Lieutenant Code was given orders to be at Fort Buchanan in Puerto Rico initially before it was changed from 2005 to 2008. Nobody contests that. Nobody contests that at the Board, that's correct, Your Honor. Nobody contests that, okay. So then, and he received change of station orders on May 23, 2007, sending him to Kingsville? He did. Now, if I may, what he gets and what an individual gets on their orders is a projected rotation date. That means that's a projected date that they're going to leave. It's not set in stone. Of course. It's set up to the needs of the Navy, as you know, and the needs of the military. And he was told then, prior to that, at the district court, he specifically said it's an undisputed fact that he was told early in 2007 that his orders were going to change in summer of 2007. So when he submitted the enrollment form in April, on April 30, 2007, he knew. What was the undisputed fact? Because his declaration doesn't say what you just said. Correct, Your Honor. At the district court, Lieutenant Cote's position was that it was an undisputed fact that in early 2007, Mr. Cote was advised in, I'm sorry, but there's no dispute that Mr. Cote was advised in early March 2007 that he would be receiving new change of station orders in the summer of 2007. That's DCF number 20-1, that's in their brief to the district court. And do orders remain an officer's current orders until they expire or are formally changed by issuance of new and different orders? They do. They remain the current orders, but there are certainly now what the board's position was is that he knew that they were now changing. Well, everyone seems to agree, and I hear you, that you've said that very carefully, and I understand that. Everyone seems to agree that Lieutenant Cote heard by word of mouth earlier in 2007 that he would be reassigned earlier. Did his hearing that news invalidate his 2005 to 2008 order? It didn't invalidate them, Your Honor. It changed them. Because what the issue was... Hearing that by word of mouth changed the underlying order? It changed his understanding of the order. It seems everybody's understanding of what was likely to happen changed. And I don't think he's disputing that. So the question is what did change his order? What changed that underlying order? What would have changed the underlying order is the May 23, 2007 orders giving him a new assignment to Kingsville, Texas, which is then why there's obtaining services under false pretenses, because he then, when he, he did not then disenroll his children for the 2007-2008 school year. I understand, right. So he, and then he heard this, and he actually applied for extension of his orders past the July 2008 expiration date. Yes, Your Honor. He wanted them to be through August 2008, right? Yes, Your Honor. Okay, and if that had been granted, and we know that was denied, and in timing that the investigation found to be quite troubling, but if that had been granted, there's no question that he would have been entitled to continue to send his children to the school, right? That he would have been entitled. I mean, maybe they wouldn't have accepted that, but had it been granted, and he'd be given an extension of his orders to August 2008, there's no question that he could have. Yes, Your Honor. Had it been granted, and there's no subsequent orders changing it, that's correct. He would have been able to send his children to the school. If there were no subsequent orders changing that. So tell me what is the false statement on the form? The false statement is that his orders expired on July 2008. So he shouldn't have written July 2008 in that blank? That's correct, Your Honor. What was he supposed to have written? To be completely honest on that enrollment form, to be 100% true and accurate, he would have to say that he didn't have an expiration date of his orders, that he had a projected rotation date in July 2008, but that he had been told that his orders were going to expire prior to that. Let me ask you, Mr. Howe, is it Howe? It's Hawk, Your Honor. Hawk. Like the bird. Like the bird, great. Is there, I didn't see the government or the CID making any claim that he somehow violated the law by enrolling his children early in the school. No, Your Honor, that's not. In fact, it was a May deadline. I'm not sure what the deadline was, but that's correct. By enrolling them in March, or in April, excuse me, that would not have been a violation of any sort. Right. And code asserts, and the government doesn't appear to dispute, that he didn't receive the letter denying his request for extension until May 8, 2007? That's my understanding, Your Honor. That's correct. Does a person have to make a knowingly false statement, or is an unintentionally false statement sufficient? They have to make a knowingly false statement, Your Honor, but the military has recognized, and I have a case from the Navy Marine Corps Court of Criminal Appeals, United States v. Hernandez. It's a 2007 Westlaw 1724912, where they recognized that a statement can be technically accurate and still be false. And that is, in this case, in Hernandez, the mother was being investigated for a travel card fraud. And as part of the investigation, they got a statement from her that said, my son is not enrolled in school in California because I want him to come to Okinawa with me. Essentially, that's what she said. They found that it was correct that he was not enrolled in school in California. He was actually enrolled in Texas. But that statement was deceiving and false because he couldn't have been enrolled in school in California having been enrolled somewhere else and not being a resident of California. The military's understanding of what a false statement is may be different from what is under 18 U.S.C. 1001. It is that even though that statement technically is true, that his orders expired, like in this case where Lieutenant Codes orders expired in July 2008, he had information to change that. And that information was official enough for him to question. Is there some sort of regulation or guidance in the record or something that we can take judicial notice of that says that when you're asked basically what your assignment is, you can't put down what's on your current piece of paper that's your orders? You have to put a qualifier in there of what you've been verbally told? There is nothing, Your Honor, that you could take judicial notice of other than that the military expects that their officers will, of course, be completely truthful and honest in there. But, I mean, the form doesn't say tell us what you've been told or what your best understanding is. It says like what's, I'm trying to remember the wording, but it's basically what's your present assignment. So why isn't that asking for the literal truth? It doesn't say, I mean, I see the way that the form is written, and it seems to cut against what you're saying because the form also has on there please update us if and when things change. So it wouldn't be consistent with your interpretation for them to also have that other language in there, would it? Well, it would, Your Honor, if that's the complete truth. If there isn't a specific expiration date and that you are now projected to leave at some other time, I think you would have to tell the school that. He claims he did tell the registrar. He said, you know, it's likely, I've heard I'm going to be reassigned, so, you know, what do I do here? And he says the registrar said it's based on your current orders. So, and as I understand it, the CID report includes, I think this is on Appendix 404, a report of having gone and interviewed that registrar. Do you have any information whether they asked her about that conversation that Code reported? No, Your Honor, I have no information that they asked her about it, and there is no information in the record that the registrar provided a statement on that. Is there? Lieutenant Coates argues that the registrar told him that. Right. But the board found that he didn't present any information to that effect, and it's his early to show an error or injustice. Other than his declaration. Other than his declaration, that's correct. And the rebuttal that the investigators put in was this discussion with the hypothetical that was presented to the registrar, right? Yes, that's correct, Your Honor. And so they said, would you, is there any chance you would have said that to him, to a person in this situation? And she said there is no chance because as she then read the rules governing attendance, he would not have been eligible. Right. Is the school military or is it a contractor? What's the relationship between that Department of Defense activity? It is a Department of Defense agency, the Department of Defense educational activity. They run the school? They run the school. And once they found out that he wasn't, his children were not eligible, why didn't they ask him to leave? I think, Your Honor, the dates are important here, and what school year we're talking about is also important. The school year we're talking about is 2007-2008. So in April he submits his enrollment form, and this gets to the obtaining services under false pretenses charge. And then he receives his orders in May, on May 23, 2007, he receives his orders to go to Kingsville, Texas. He says in his declaration, I believe it's Appendix 456, he says I immediately called the registrar and told him that I had gotten these orders. The registrar, and then his statement is the registrar didn't tell me that I had to disenroll my children or that they weren't eligible, which makes sense because on May 23, 2007, the 2006-2007 school year would have still been in session. So when he calls and says I got these orders that I need to move in June, the registrar is thinking, well, these kids are enrolled in 2006-2007 school year. By regulation, they can finish out that school year, but there's what's not in session. So you're saying school's still in session? Correct, Your Honor. So what's... But that's not an argument I saw, actually, anywhere in the record or an analysis given by the investigators. It's a bright idea. Well, no, I think it's intimated in the board's decision. It may not be directly stated that same way, but it is indicated. They indicate the dates and when the registrar made that statement and the fact that he didn't submit any statement from the registrar to support it. But once she has that information, why? I mean, it's just puzzling because then we have, for example, in March 2008, the school is made aware of this investigation and of the order change. It's just puzzling to me why the discussion is why doesn't Code remove his children as opposed to they could expel those children as soon as they know. Again, I think, Your Honor, there is some... The way the military works is that they expect much of the individual. And if Mr. Code knew that his children were not eligible to go to that school, it was on him to disenroll those children and remove them from the school. And the registrar would not really have any knowledge that they weren't going to start in 2007, 2008. What the registrar understood from the statement or the call, if we agree that it happened from Lieutenant Code, was that he was getting orders in June. I'm sure the registrar simply assumed if he's going to be leaving in June and his children aren't eligible, then those children will not attend school. They had only been enrolled, so they hadn't actually started school. So the false pretense in this case would be Lieutenant Code sending his kids to school on August 13, 2007, even though they were ineligible to attend and knowing that they were ineligible to attend. Although he also says, and reading the, I think it's called information, the policy statement about the school, there is a policy by which children, once enrolled, even if there's a change, and it makes sense for continuity of the education of the children, might be allowed to stay. That's correct, Your Honor. That happens when the school year has already started, between September and May. But he says that the registrar said, don't worry about it. If they're already enrolled, you can move and they can stay for continuity. And I don't see anything addressing his claim that as a matter of his both actual and reasonable belief, that how he could have thought that he's getting this boon of the Puerto Rico school, even while he's off to Texas, is because that's what he understood the baseline to be. You know, you enroll and then thereafter things can change, but the children can continue. And that may be, Your Honor, but the evidence in the record was his declaration. And the board specifically said there's no statement from the registrar, a statement which seems like it would be easily obtained. And they said that in both decisions. It would be easily obtained by the investigators as well, and they didn't obtain any specific. Well, that's correct, but the investigation was already done. That's the board making that decision. So it's his burden, of course, at the board to show an error or injustice. Right. His declaration, the board just found that there was other credible evidence that supported the credible evidence finding and the titling, and his statement just was not as credible because he didn't have that statement. They don't find that his statement is not credible, which is important under our precedent. They don't find that his statement was not credible. What they found was that it was not corroborated. They found that it was less credible than the other evidence that they had because he didn't have that corroboration from the registrar, even though they believed it was easily obtained. And, in fact, essentially invited him to submit that type of information by saying that it's easily obtained and could change the outcome of this case. Does an individual have a right to subpoena someone and depose her, like the registrar in this case? Your Honor, the ABCMR or at the board, do they have the right to subpoena? Would Lieutenant Code have had an opportunity to depose the registrar had he wanted to get a statement? The board typically doesn't have in-person hearings. It doesn't have witnesses like that. I'm saying a deposition would be out of court. Typically in civil litigation, a deposition is something that you could notice through a subpoena and conduct in order to get someone who's unwilling. I mean, she works for the military here, but if he wanted to get her statement under oath, is there a mechanism that he could have used to do that? I don't know that, Your Honor. It's not something I considered, but I believe that he would be able to, and I don't see why. We're assuming that the registrar would not be willing, and I don't see why the registrar wouldn't be willing to make such a statement if it was helpful to somebody who's in the military. What if what happened is that Lieutenant Code called the registrar and said, I've just been advised that my orders have changed. Do I have to disenroll my children from the school? And the registrar said no. The registrar is thinking that he's asking about this school year, but he's asking about this school year and next school year. And so he hangs up and thinks that everything is fine, but this is really just a misunderstanding where he's thinking one thing and the registrar is thinking something else. If that's the case, Your Honor, I would go back to the regulation. Again, a military officer, someone with his experience and someone who's enrolled his children in school several times, would know what the rules required, and would probably have to ask for some clarification from the registrar as to whether it meant which school year it meant. Because I think if you were saying that he did call her and ask her that, I think she would have to say it's about this school year that you're asking about, not about the upcoming school year, because they're closing out the 2006-2007 year. All right. When I asked Mr. Manman why, if we sent back the – if we found the failure to address the probable cause issue arbitrarily, why he cared about the titling decision and the information in the file, he said it could have other consequences for code, and he mentioned it could threaten his security clearance and other things. Do you have any response to that? Is that true? I don't know, Your Honor, that titling does, in fact, have an effect on someone's security clearance. The probable cause finding by the government is a record statement. No, no, I don't want to know about the probable cause. I want to know about the titling decision. Yes, Your Honor. Is there any regulation, is there anything that says the information there can't be used for any other purposes? No, Your Honor. There isn't, and that would go to the other part of the case that isn't before this court but was an issue of the information that they gave to the finance service. On the recoupment of the cost of tuition, if there's no probable cause finding, if that were somehow reversed or invalidated, is there another avenue by which the military would pursue some kind of unjust enrichment or quantum merit action? If the probable cause finding was overturned, I believe it would still be that the titling decision would still be adequate and that would be one of the effects, Your Honor, that it could have, is that they would still seek to obtain the recoupment. And how about if that also were? Because both of those really go to suspected and probable cause bearing on criminal activity. But if it weren't criminal, if it were unintentional but nonetheless unjust, is there a separate mechanism that the military would pursue? Innocent mistake, yes, but gee, you got a huge benefit when your kids should have been in, I guess they should have been in public school in Texas, is that correct? Well, they would have been, Your Honor, they would have been eligible to go to, possibly eligible to go to a Department of Defense school in Texas, but my understanding is they didn't accompany each other. So had they accompanied him, there's a parallel school in Texas on the base where they might have gone in Kingsville. I'm not aware of that. If there is, there may be, Your Honor. They're not everywhere throughout the Department of Defense, but there are. And so the titling does have that effect. It does have that effect. I don't know of any other, to answer your question from a second ago, I don't know of any other avenue for the Department, that the Department of Defense would take, but I think that would be something that the finance service would have to determine if they want to do that or not. Okay, thank you. Thank you. Did Mr. Naiman have any time left? Okay, you can take two minutes. Thank you, Your Honor. I'd like first to make a few points. I'd first start with the probable cause, whether it was raised. Well, it certainly was raised. It was raised at Appendix 18 in Mr. Codes' complaint, Lieutenant Codes' complaint. It was raised in summary judgment, which was not part of the appendix, but Docket 20-1 at page 18. You both noted there was not credible information and certainly not probable cause. So both of those issues were raised in the district court. They were raised before the board. They were raised in the district court before the motion for reconsideration? They were raised, yes. Docket number 20 that I referred to was Lieutenant Codes' motion for summary judgment, his own motion for summary judgment. Lieutenant Codes also pointed out the impact of the CID report, which includes the tithing decision to the board, and that's at Appendix 370. And then to the question, there was a question about, well, the school's enrollment and the policy, and I think it's instructive to look at the school's regulation, the DOD school's regulation, it's an addendum on page 11, which ties the eligibility to where, and if the orders change, whether a student is still eligible, to where the student is, whether the student is currently enrolled. And I understood the Council for the Government to acknowledge that once the enrollment form had gone in, the students were currently enrolled. And so certainly the board has never looked at this regulation and said that under the terms of this regulation, that the students weren't eligible to continue in the school when his orders changed because he was currently enrolled. Judge Fuller, to your question about depositions, I'm not aware, certainly I've never seen it in one of these board proceedings, I'm not aware that there's any avenue as a part of the board proceedings for Lieutenant Code to have gone out and certainly compelled the registrar to answer questions or submit to a deposition. That's something that the government has the authority to obtain that information, they have the investigators who have done that, and so Lieutenant Code was not in a position to go out and enforce those statements. I thank you for that court's time. Thank you both. The case is submitted.
judges: Tatel, Pillard, Wilkins